courtdocs@dickinsonwright.com
Carolyn J. Johnsen (#011894)
cjjohnsen@dickinsonwright.com
William L. Novotny (#004239)
wnovotny@dickinsonwright.com
DICKINSON WRIGHT PLLC
1850 N. Central Ave., Ste. 1400
Phoenix, Arizona 85004
Phone: (602) 285-5000
Fax: (602) 285-5100
*Proposed Attorneys for the Debtor*

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>PRESCOTT VALLEY EVENTS CENTER, LLC,<br><br>Debtor. | Chapter 11 Proceeding<br><br>No. 3:15-bk-10356-MCW<br><br>**EMERGENCY MOTION FOR ORDER AUTHORIZING POST-PETITION FINANCING AND GRANTING ADMINISTRATIVE EXPENSE PRIORITY**<br><br>**Hearing Date: TBD**<br>**Hearing Time: TBD** |

**THIS MOTION REQUESTS THE GRANTING OF AN ADMINISTRATIVE PRIORITY CLAIM TO SECURE A DEBTOR-IN-POSSESSION LOAN**

Prescott Valley Events Center, LLC ("Debtor") hereby requests the Court enter an Order authorizing post-petition financing and granting an administrative expense priority pursuant to 11 U.S.C. §§ 364 (b) and (c)(1) (the "Motion"). The post-petition financing is a loan in the amount not to exceed $300,000.00 ("Loan") to be drawn monthly in estimated tranches of $55,000.00 or as needed. The lender is the Fain Signature Group, LLC ("FSG") the ("Lender"). The Loan will be evidenced by, among other things, a Promissory Note substantially in the form attached as Exhibit A. The Motion is

supported by the *Declaration of Sean B. Fain in Support of First day Motions* (the "**Fain Declaration**"), with the following Memorandum of Points and Authorities and all matters of record, which are incorporated herein by reference.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. JURISDICTION AND VENUE.

1. On August 14, 2015 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2. The Debtor continues to manage its property as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108. No trustee or examiner has been appointed.

3. This Court has jurisdiction over this Chapter 11 case under 28 U.S.C. §§ 157 and 1334.

4. This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

5. Venue is proper in this district.

### II. FACTUAL BACKGROUND.

#### A. Overview

6. The Debtor (also referred to as "PVEC") is an Arizona limited liability company formed in 2005 to construct and operate a multi-purpose sports and entertainment arena known as the Prescott Valley Events Center (the "Center") in Prescott Valley, Arizona. The Center opened in 2006 and plays host to concerts, community events, trades shows, and sporting events, including several high school championships. Until 2014, the Center served as the home of the Arizona Sundogs (CHL) ice hockey team. The Center's seating capacity is 6,200 for concerts, 4,810 for hockey, and 5,100 for basketball.

7. The members of the Debtor are J A Flats, Inc. ("Flats I") holding a 1 percent (1%) interest and J A Flats, II, Inc. holding a 99 percent (99%) interest. Flats I is

the manager of the Debtor and is the manager of the Center pursuant to a Management Agreement. Mr. Fain is the President and sole shareholder of Flats I.

**B.  Assets and Liabilities.**

**Principal Leases and Agreements**

8.  The Center is located on property owned by the Entertainment Center Community Facilities District ("District"), which leases the Center to the Debtor under a long-term lease, with the term expiring on October 2, 2031. The rental for the Center consists of $1 per year, plus payment of all obligations due the Industrial Development Authority of County of Yavapai ("IDA"), as the issuer of certain bonds in the aggregate principal amount of $35,000,000 ("Bonds").

9.  The principal parking location for the Center is located on property adjoining the Center that is owned by PV Signature. The Center uses the parking area pursuant to a Parking Access Agreement between the Debtor and PV Signature.

**Other Assets**

10.  The Debtor's other assets consist of machinery, equipment, furniture, furnishing, and other personal property believed to have a value of approximately $167,000. The current accounts receivable due the Debtor are approximately $9,500.

11.  In addition, PVEC has currently scheduled approximately 15 future events at the Center, including college hockey games, wrestling tournaments, high school sport championships, a home and garden show, graduation ceremonies, a music festival, fairs, and exhibitions.

**Bond Debt**

12.  The real property where the Center is located was contributed to PVEC by PV Signature and then was conveyed to the District. The construction of the Center was financed by the issuance of Bonds by the IDA. The IDA in turn loaned the bond funds to PVEC pursuant to a loan agreement. The amount currently owed under the Bonds is believed to be $35 million in principal, plus significant amounts of accrued and unpaid

interest (the "Bond Debt"). The Bonds mature in October 2031. Wells Fargo Bank, N.A. acts as the Trustee under the Indenture of Trust relating to the Bonds.

13. The Bonds are primarily secured by a pledge of certain rights under a Development Agreement between, among others, the Town of Prescott Valley (the "Town") and Debtor. Those rights include the right to receive a portion of the transaction privilege taxes collected by the Town within two designated areas of the Town (the Expanded Entertainment District and the Secondary Support Area).

14. The Bonds are also secured by a pledge of the net cash flow from the operations of the Center. PVEC has not generated any net cash flow and has therefore not made any direct payments under the Bonds since 2007.

15. The Debtor's other assets, e.g. the Debtor's accounts receivable, furniture fixtures and equipment or the Debtor's leasehold interest in the Center, are unencumbered.

16. There are believed to be approximately 325 holders of the Bonds ("Bondholders"). The majority of Bonds are held by Allstate Life Insurance Company.

**Other Debt**

17. The Debtor has less than $100,000 in unsecured, non-disputed, non-insider debt, consisting mainly of trade payables, as well as the significant obligations under the Bonds and potentially to others for various disputed debts and claims.

**Income**

18. Income is generated from a number of sources including rent, ticket sales, parking, and concessions from events; advertising; and suite leases and premium seating.

19. In addition, pursuant to the assignment of certain of PVEC's rights under the Development Agreement, the Town makes periodic payments toward the obligations under the Bonds to the Trustee under the Indenture, of various transaction privilege tax revenues collected by the Town. The Town also pays approximately $100,000 annually

(plus annual increases) to PVEC, for facility time for use by the general public, which is used to defray operating expenses of the Center.

**C. <u>Events Precipitating the Bankruptcy Filing</u>.**

1. The Center provides an extremely important function in hosting sports and entertainment events not only for the Prescott Valley community but for the entire Northern Arizona area. Due to the downturn in the national and local economies, and to the burden of now-resolved securities litigation with the bondholders, Debtor has struggled since its inception to cover its expenses and, in particular, to provide debt service on the Bonds. With the economy improving and the securities litigation now settled, Debtor believes that it may be able to establish a sustainable business over time, subject to obtaining a new major tenant for the Center, such as a minor league hockey team.

20. The bankruptcy filing and the need for reorganization were precipitated by the Chapter 7 bankruptcy case of Global, which had acted as the Debtor's managing member and as the manager of the Center. Since the acquisition of Global's rights and interests in January 2015, the current management of PVEC has determined that PVEC cannot continue to operate the Center without obtaining relief under Chapter 11 of the Bankruptcy Code.

21. In addition to the above, the obligations under the Bonds are and have been in default. The Debtor believes that the Bondholders and/or the Trustee under the Indenture may initiate collection remedies, thus depriving the Debtor of its ability to maintain its going concern value for the benefit of creditors (including the Bondholders) and the bankruptcy estate.

22. When Flats I assumed management of the Center and of PVEC in late January 2015, it immediately focused on increasing operational efficiency and obtaining new event contracts in order to increase revenues. However, it was recognized that the Center's and PVEC's deficits could not be rectified immediately and without

reorganization and restructuring. Ultimately, the Debtor concluded that the respite provided by a Chapter 11 proceeding would give it the ability to address operational issues and restructure its overwhelming debt in order to preserve the Center as a going concern for the benefit of creditors and the community. Consequently, the Debtor filed this case on August 14, 2015.

### III. THE FINANCING FACILITY.

#### A. Need for the Loan.

23. Since January 2015 and prior to the bankruptcy filing, FSG has advanced funds to the Debtor on an unsecured basis to pay for various operational needs. The members of FSG include the Fain Companies, LLC in which Mr. Fain is a member. Since January 2015, FSG has advanced not less than $500,000to PVEC. The Debtor is still in need of such funds.

24. To that end, FSG has agreed to provide a loan of up to $300,000, secured solely by the receipt of an administrative priority claim in the bankruptcy case. The terms of the loan call for 8% per annum interest and a maturity date of the lesser of one year, the effective date of plan confirmation, or conversion to Chapter 7.

25. The Debtor has considered other possible financing options; however, obtaining the Loan from FSG provides the most expedient manner by which to obtain the needed funds. FSG is familiar with the operations of the business and already has served as a source of funding. The Debtor believes any other lender would require security which the Debtor is not prepared to offer.

26. The estate will benefit from the Loan in that operations will be preserved. This is critical as the Debtor formulates its plan. Creditors will not be harmed by the financing proposal.

#### B. Loan Terms.

27. **The Lender:** Fain Signature Group, LLC

28. **Amount of Credit Line**: $300,000.00 to be used for general corporate purposes.

29. **Term**: the lesser of one year, effective date of plan confirmation, or conversion to Chapter 7.

30. **Repayment**: at plan confirmation.

31. **Rate**: 8% per annum.

32. **Security**: Administrative priority claim.

33. **Draws**: As needed (anticipated to be up to $55,000 per month) commencing immediately after the approval of this Motion and each month thereafter.

34. **Promissory Note**: Attached as Exhibit A.

## MEMORANDUM OF POINTS AND AUTHORITIES.

Bankruptcy Code § 364(b) provides that the Court may authorize a debtor to obtain unsecured credit or incur unsecured debt, other than under Bankruptcy Code § 364(a), as an allowable administrative expense under Bankruptcy Code § 503(b)(1). *See* 11 U.S.C. § 364(b); *see also, e.g., Transamerica Commercial Fin. Corp. v. Citibank, (In re Sun Runner Marine, Inc.)*, 945 F.2d 1089, 1092-93 (9th Cir. 1991). Additionally, Bankruptcy Code § 364(c) provides, among other things, that if a debtor is unable to obtain unsecured credit as an allowed administrative expense under Bankruptcy Code § 503(b)(1), the court may authorize the debtor to obtain credit or incur debt pursuant to: (i) Section 364(c)(1), with priority over any or all administrative expenses of the kind specified under Bankruptcy Code §§ 503(b) or 507(b). *See* 11 U.S.C. §§ 364(c)(1) & (c)(3); *see also In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 36-37 (Bankr. S.D. N.Y. 1990).

The court's discretion under Section 364 "is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest." *See Ames Dept. Stores*,

115 B.R. at 40. A bankruptcy court should only scrutinize a corporation's business judgment "where there are allegations of, and a real potential for, abuse by corporate insiders." *See In re Simasko Production Co.*, 47 B.R. 444, 449 (D. Colo. 1985).

Here, approval of the Loan would allow the Debtor to continue and preserve ongoing operations while it continues to develop its plan of reorganization and to maximize the value of the Debtor's estate for its creditors. The Debtor believes that over the next few months, it will experience a cash-flow shortage of at least $55,000 per month. To protect against that possibility, the Debtor seeks debtor-in-possession financing and approval of the Loan. The Loan will allow the Debtor to preserve its relationships with its vendors, who supply goods and services that are vital to the Debtor's operations. Without the funds, the Debtor may lose the ability to maintain such ongoing business relationships, and therefore, the value of the Debtor's estate may be compromised.

The Debtor has not secured sufficient post-petition financing from any alternative prospective lender on more favorable terms and conditions than those set forth herein. Additionally, time is of the essence because the Debtor requires the funds to maintain its business operations. Accordingly, the Debtor has exercised its sound business judgment, and the circumstances of this case require the Debtor to obtain financing pursuant to Bankruptcy Code §§ 364(b) and (c)(1). Therefore, the Motion should be approved.

The Debtor proposes that the Motion should be granted on an interim basis allowing an initial advance of $55,000.00 which will have administrative priority.

**IV. NOTICE.**

35. No trustee, examiner, or official committee has been appointed in this case.

36. Notice of this Motion has been given to the Office of the United States Trustee, Wells Fargo Bank, N.A. as Trustee under the Indenture of Trust relating to the Bonds, the majority Bondholder Allstate Life Insurance Company, the Town of Prescott

Valley, and the Debtor's twenty (20) largest unsecured creditors. Based on the nature of the relief requested in this Motion, the Debtor submits that no other notice need be given.

## V. REQUESTED RELIEF.

WHEREFORE, the Debtor requests the Court enter an order in the form attached as <u>Exhibit B</u> granting the Motion on an interim basis and such other and further relief as is just and proper under the facts and circumstance.

DATED this 14th day of August, 2015.

**DICKINSON WRIGHT PLLC**

By: /s/ Carolyn J. Johnsen
    Carolyn J. Johnsen
    William L. Novotny
    *Proposed Attorneys for the Debtor*

**FOREGOING** electronically filed with the Clerk of the U.S. Bankruptcy Court for the District of Arizona this 14th day of August, 2015, with a COPY served this same date via e-mail on the following party:

Edward Bernatavicius
U.S. TRUSTEE'S OFFICE
230 N. First Avenue, Suite 204
Phoenix, AZ 85003
edward.k.bernatavicius@usdoj.gov
*Attorneys for the United States Trustee*

Michael P. Cillo
Scott W. Wilkinson
DAVIS & CERIANI PC
1350 17th Street, Sutire 400
Denver, CO 80202
mcillo@davisandceriani.com
swilkinson@davisandceriani.com
*Attorneys for Allstate Life Insurance Company*

| | |
|---|---|
| 1 | Michael J. Lavelle |
| 2 | Matthew K. Lavelle |
| | LAVELLE & LAVELLE, PLC |
| 3 | Camelback Esplande II Center, Suite 888 |
| 4 | 2525 East Camelback Road |
| | Phoenix, AZ 85016 |
| 5 | mjl@lavelle-lavelle.com |
| | matt@lavelle-lavelle.com |
| 6 | *Attorneys for Allstate Life Insurance Company* |
| 7 | |
| | Alain M. Baudry |
| 8 | ROSS & ORENSTEIN, LLC |
| | 222 South Ninth Street, Suite 470 |
| 9 | Minneapolis, MN 55402-3389 |
| 10 | abaudry@rossbizlaw.com |
| | *Attorneys for Wells Fargo Bank, N.A.* |
| 11 | |
| 12 | Jared G. Parker |
| | PARKER SCHWARTZ, PLLC |
| 13 | 7310 N 16th Street, Suite 330 |
| | Phoenix, AZ 85020 |
| 14 | jparker@psazlaw.com |
| 15 | *Attorneys for Town of Prescott* |
| 16 | 20 Largest Unsecured Creditors |
| | of Debtor |
| 17 | |
| | /s/ Lauri Andrisani |
| 18 | PHOENIX 54097-2 237512v1A |

# EXHIBIT A

# P R O M I S S O R Y   N O T E

## REVOLVING LINE OF CREDIT

$300,000.00                                                    Effective Note Date: August __, 2015

      FOR VALUE RECEIVED, PRESCOTT VALLEY EVENTS CENTER, LLC, an Arizona limited liability company ("**Maker**"), debtor and debtor-in-possession in bankruptcy case number _____ ("**Bankruptcy Case**"), pending in the United States Bankruptcy Court for the District of Arizona ("**Bankruptcy Court**"), does hereby promise to pay to THE FAIN SIGNATURE GROUP, L.L.C., its successors and assigns, or any other holder hereof (collectively the "**Holder**"), the principal sum of Three Hundred Thousand Dollars ($300,000.00), or such portion thereof as has been advanced to Maker by Holder, pursuant to the following terms.

      1.    **Principal**. The outstanding principal of this Promissory Note shall be determined by the Maker requesting periodic distributions from the Holder. Upon receipt of any such requests, the Holder has a right to review and approve any and all draw requests and reduce or deny the approved draw in its sole discretion. In no event shall Holder be required to distribute a cumulative principal sum that exceeds the stated principal amount of this Note.

      2.    **Interest**. Interest shall accrue at an annual rate equal to eight percent (8%) from the Effective Note Date until paid.  All interest shall be: (a) calculated daily by multiplying the outstanding principal sum for that day by the applicable annual interest rate and dividing by 360 days; (b) compounded monthly, and (c) accrued on the number of days funds are actually outstanding.

      3.    **Payment**.  All sums payable hereunder shall be payable to the Holder at 3001 Main Street, Suite B, Prescott Valley, Arizona 86314, or at such other place or places as the Holder may direct from time to time, in legal tender or as otherwise agreed to by Holder. The entire outstanding principal of this Note and all interest that accrues on the unpaid balance of this Note shall be due and payable at the Maturity Date (as defined below). Holder will apply each payment first to pay interest accrued to the day Holder receives the payment, and then to any principal balance of this Note.

      4.    **Maturity**. This Agreement will continue in full force and effect from the Effective Note Date until the earliest of:

        a.    the 365th day following the Effective Note Date set forth above;

        b.    the Effective Date of a plan of reorganization confirmed by an Order of the Bankruptcy Court; or

        c.    the conversion of the Case from a chapter 11 proceeding to a chapter 7 proceeding, or the appointment of a chapter 11 trustee.

The first to occur of any date or event described herein or below is the "**Maturity Date**."

-1-

4. **Administrative Priority Claim**. The Holder has agreed to make the loans evidenced by this Note conditioned upon the receipt by Holder of an administrative priority claim pursuant to 11 U.S.C. § 364(b), with priority as specified in 11 U.S.C. §§ 503(b)(1)(A) and 507(a)(2).

5. **Events of Default**. In its sole discretion, without any requirement of motion, application, notice, or further order of the Bankruptcy Court, Holder is authorized, but not required, to terminate this Note and the use and advancement of the loan proceeds provided for herein, forthwith upon the occurrence of any of the following events:

   a. Conversion or dismissal of the Bankruptcy Case; or

   b. Termination or expiration of the exclusivity period under 11 U.S.C. § 1121; or

   c. Any representation made hereunder shall prove to have been false in any material respect when made; or

   d. A breach by Maker of any provision of this Note; or

   f. Any motion for an order appointing a trustee or an examiner in the Bankruptcy Case shall be granted.

6. **Acceleration Upon Default**. The entire unpaid principal balance of and all interest accrued under this Note shall become due and payable immediately upon a default by the Maker in the payment of any principal and/or interest as and when due and payable in accordance with the terms hereof.

7. **Collection Expense**. If there is an event of default under this Note and this Note is placed in the hands of an attorney for collection, or in the event that this Note is collected in whole or in part by suit or through probate or bankruptcy proceedings, or other legal proceedings of any kind, the Maker agrees to pay, in addition to all the sums payable hereunder, the Holder's reasonable expenses of collection, including without limitation, reasonable attorneys' fees and disbursements, whether or not suit is brought and through all appeals.

8. **Waiver**. No delay or omission on the part of Holder in exercising any right hereunder shall operate as a waiver of such right or of any right under this Note. No waiver shall be binding on Holder, unless in writing signed by an authorized officer of Holder, and then only to the extent specifically set forth herein. The Borrower hereby waives: presentment for payment, protest and demand; notice of protest, demand, dishonor and nonpayment of this Note; and each and every other notice of any kind respecting this Note except as provided herein.

9. **General Provisions**.

   a. This Note cannot be changed or modified orally.

   b. No modification, variation, termination, discharge, abandonment, or waiver of any of the provisions or conditions of this Note shall be valid

unless in writing and signed by duly authorized representative of the party subject to be bound by such action; and a waiver on one occasion shall not be construed as continuing or as a bar to or waiver of such right or remedy on any other occasion.

c. Time is of the essence with respect to all of Maker's obligations and agreements under this Note.

d. This Note and all its provisions, conditions, promises, and covenants shall be binding in accordance with its terms upon Maker and Maker's successors and assigns and the same shall inure to the benefit of Holder and Holder's successors and assigns.

e. All nouns and pronouns contained in this Note shall mean and include the plural as well as the singular, and the masculine, feminine, and neuter gender whenever and wherever the context so admits or requires.

f. The headings of the paragraphs contained in this Note are for convenience of reference and in no way modify, interpret or construe the meaning of the parties hereto.

10. **Governing Law**. This Note shall be construed in accordance with and governed by the local laws of the State of Arizona, without regard to the State's rules regarding choice of law.

11. **Bankruptcy Court Approval**. This Note is subject to, and shall not become effective, until it is approved by a written Order of the Bankruptcy Court. Maker shall prepare and file a motion seeking bankruptcy approval of this Note and of the loans evidenced hereby. If the Bankruptcy Court fails to enter an Order approving the material terms of this Note, the Promissory Note shall be null and void and have no further force and effect.

The date of this Promissory Note is the Effective Note Date.

**MAKER:**

Prescott Valley Events Center, LLC,
an Arizona limited liability company

By: J A Flats, Inc., an Arizona corporation, its Manager

By:_____
    Sean B. Fain
Its: President

# EXHIBIT B

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>PRESCOTT VALLEY EVENTS CENTER, LLC,<br><br>　　　　　　Debtor. | Chapter 11 Proceeding<br><br>No. 3:15-bk-10356-MCW<br><br>**INTERIM ORDER GRANTING EMERGENCY MOTION FOR ORDER AUTHORIZING POST-PETITION FINANCING AND GRANTING ADMINISTRATIVE EXPENSE PRIORITY**<br><br>**Hearing Date: TBD**<br>**Hearing Time: TBD** |

This matter comes before the Court pursuant to the Debtor's *Emergency Motion for Order Authorizing Post-Petition Financing and Granting Administrative Expense Priority* (the "Motion") [Dkt. # ___].

**THE COURT HEREBY FINDS AND DETERMINES**:

1. It has jurisdiction over the matters raised in the Motion under 28 U.S.C. §§ 157 and 1334.

2. Venue of this matter is proper under 28 U.S.C. §§ 1408 and 1409.

3. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4. The relief requested in the Motion is in the best interests of Debtor, its estate, its creditors, and other parties in interest.

5. Adequate and proper notice of the Motion has been given, and no other or further notice of the Motion is required.

6. An immediate and ongoing need exists for Debtor to obtain financing to continue the operation of its business as debtor-in-possession under Chapter 11 of the Bankruptcy Code and to minimize disruption of Debtor's business.

7. Despite diligent efforts, Debtor has been unable to obtain financing in the form of unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense or solely in exchange for the grant of a special administrative expense priority pursuant to Bankruptcy Code § 364(c)(1) other than the financing from Lender[1] pursuant to the terms as set forth in the Promissory Note.

Based on the foregoing and good cause appearing therefor,

**IT IS HEREBY ORDERED**:

A. The Motion is GRANTED on an interim basis;

B. The Court authorizes and approves: (i) Debtor's execution and delivery of the Promissory Note attached as Exhibit A to the Motion (ii) the immediate disbursement to the Debtor the amount of $55,000.00 which will have administrative priority over all other administrative expenses or claims in the case.

C. A final hearing on the Motion will be held before this Court on _____**, at the United States Bankruptcy Court, 230 N. First Avenue, Phoenix, Arizona,** 7th **Floor, Courtroom No.** 702**.**

**SIGNED AND DATED ABOVE.**

PHOENIX 99999-100 237455v1

---

[1] Unless otherwise indicated, capitalized terms herein correspond with capitalized terms in the Motion.