courtdocs@dickinsonwright.com
Carolyn J. Johnsen (#011894)
cjjohnsen@dickinsonwright.com
William L. Novotny (#004239)
wnovotny@dickinsonwright.com
DICKINSON WRIGHT PLLC
1850 N. Central Ave., Ste. 1400
Phoenix, Arizona 85004
Phone: (602) 285-5000
Fax: (602) 285-5100
*Proposed Attorneys for the Debtor*

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>PRESCOTT VALLEY EVENTS CENTER, LLC,<br><br>Debtor. | Chapter 11 Proceeding<br><br>No. 3:15-bk-10356-MCW<br><br>**DECLARATION OF SEAN B. FAIN IN SUPPORT OF FIRST-DAY MOTIONS**<br><br>**Hearing Date: TBD**<br>**Hearing Time: TBD** |

I, Sean B. Fain, hereby make the following Declaration of my own personal knowledge as follows:

1. I am an adult person over eighteen (18) years of age residing in Yavapai County, Arizona.

2. I am the President of J A Flats, Inc. ("Flats I"), which owns 1 percent (1%) of Prescott Valley Events Center, LLC (the "**Debtor**" or "**PVEC**"), the debtor and debtor-in-possession in the above-captioned case. Flats I is the Manager of the Debtor.

3. I am duly authorized to submit this Declaration on behalf of the Debtor.

4. I make this Declaration in support of:

   a. Emergency Motion for Interim and Final Orders Under 11 U.S.C. §§ 366 Determining Adequate Assurance of Payment for Future Utility Services and Establishing Determination and Objection Procedures;

b. Emergency Motion for Entry of Interim and Final Orders Under 11 U.S.C. §§ 105, 345, and 363 Authorizing Maintenance and Use of Debtor's Existing Bank Accounts, Cash Management System, and Business Forms;

c. Emergency Motion for Order Authorizing Post-petition Financing and Granting Administrative Expense Priority; and

d. Emergency Motion for Order Establishing official Service List for Limiting Notice and for Allowing Hearings to be Conducted in Phoenix, Arizona

e. Application for Order Authorizing Retention and Employment of Dickinson Wright PLLC as Attorneys for the Debtor

**The Debtor's Corporate Structure and Operations**

5. PVEC is an Arizona limited liability company formed in 2005 to construct and operate a multi-purpose sports and entertainment arena known as the Prescott Valley Events Center (the "**Center**") in Prescott Valley, Arizona. The Center opened in 2006 and plays host to concerts, community events, trades shows, and sporting events, including several high school championships. Until 2014, the Center served as the home of the Arizona Sundogs (CHL) ice hockey team. The Center's seating capacity is 6,200 for concerts, 4,810 for hockey, and 5,100 for basketball.

6. The original members of PVEC were Prescott Valley Signature Entertainment, LLC, an Arizona limited liability company ("**PV Signature**"), and Global Entertainment Corporation, a Nevada corporation ("**Global**"), which each owned 50 percent of the membership interests in PVEC. Global acted as the managing member of the Debtor. Global was also the manager of the Center, pursuant to a Management Agreement between PVEC and Global ("**Management Agreement**").

7. In 2014, Global filed a Chapter 7 bankruptcy case in the District of Nevada. As of January 26, 2015, Global's membership interests in the Debtor and its interests under the Management Agreement were transferred by the Chapter 7 Trustee to Flats I.

-2-
Case 3:15-bk-10356-MCW    Doc 8    Filed 08/14/15    Entered 08/14/15 12:56:28    Desc
Main Document    Page 2 of 10

Thereafter, the membership interests in the Debtor were reconstituted, with Flats I acting as the manager of PVEC and holding a 1% membership interest therein and with J A Flats II, Inc., an Arizona corporation ("**Flats II**"), holding 99% of the membership interests in PVEC.

8. I am the President of Flats I and Flats II. The Center is currently managed by Flats I under the Management Agreement.

**Assets and Liabilities**

**Principal Leases and Agreements**

9. The Center is located on property owned by the Entertainment Center Community Facilities District ("**District**"), which leases the Center to the Debtor under a long-term Lease, with the term expiring on October 2, 2031. The rental for the Center consists of $1 per year, plus payment of all obligations due the Industrial Development Authority of the County of Yavapai ("**IDA**"), as the issuer of certain bonds in the aggregate principal amount of $35,000,000 ("**Bonds"**). Upon termination of the Lease with the District, title to the Center reverts to PVEC.

10. The principal parking location for the Center is located on property adjoining the Center that is owned by PV Signature. The Center uses that parking area pursuant to a Parking Access Agreement between the Debtor and PV Signature.

11. The Center is managed by Flats I pursuant to the Management Agreement.

**Other Physical Assets**

12. The Debtor's other assets consist of machinery, equipment, furniture, furnishing, and other personal property believed to have a value of approximately $167,000. The current accounts receivable due the Debtor are approximately $9,500.

**Pending Event Contracts**

13. PVEC has currently scheduled approximately 15 future events at the Center, including college hockey games, wrestling tournaments, high school sport championships, a home and garden show, graduation ceremonies, a music festival, fairs, and exhibitions.

**Bond Debt**

14. The real property where the Center is located was contributed to PVEC by PV Signature and then was conveyed to the District. The construction of the Center was financed by the issuance of Bonds by the IDA. The IDA in turn loaned the bond funds to PVEC pursuant to a loan agreement. The amount currently owed under the Bonds is believed to be $35 million in principal, plus significant amounts of accrued and unpaid interest (the "**Bond Debt**"). The Bonds mature in October 2031. Wells Fargo Bank acts as the Trustee under the Indenture of Trust relating to the Bonds.

15. The Bonds are secured primarily by pledges of certain rights under a Development Agreement between, among others, the Town of Prescott Valley (the "**Town**") and Debtor. Those rights include the right to receive a portion of the transaction privilege taxes collected by the Town within two designated areas of the Town (the Expanded Entertainment District and the Secondary Support Area).

16. The Bonds are also secured by a pledge of the net cash flow from the operations of the Center. However, since 2007, PVEC has not generated net cash flow to pay debt service, and has therefore not made any direct payments, under the Bonds.

17. There are no security interests in the Debtor's accounts receivable, furniture fixtures, and equipment or in the Debtor's leasehold interests in the Center.

18. There are believed to be approximately 325 holders of the Bonds ("**Bondholders**"). The majority of Bonds are held by Allstate Life Insurance Company. Wells Fargo Bank, N.A. acts as the Trustee under the Indenture for all of the Bonds.

19. Pursuant to the assignment of certain of PVEC's rights under the Development Agreement, the Town makes periodic payments of various transaction privilege tax revenues collected by the Town to be applied toward the obligations under the Bonds to Wells Fargo Bank, as Trustee under the Indenture[1] The Town also pays approximately $100,000 annually (plus annual increases) to PVEC for facility time for use by the general public, which is used to defray operating expenses for the Center.

**Other Debt**

20. The Debtor has less than $100,000 in unsecured, non-disputed, non-insider debt, consisting mainly of trade payables, as well as the significant obligations under the Bonds and potentially to others for various disputed debts and claims.

**Precipitating Events Leading to the Chapter 11 Filing**

21. The Center provides an extremely important function in hosting sports and entertainment events not only for the Prescott Valley community but for the entire Northern Arizona area. Due to the downturn in the national and local economies, and to the burden of now-resolved securities litigation with the bondholders, Debtor has struggled since its inception to cover its expenses and, in particular, to provide debt service on the Bonds. With the economy improving and the securities litigation now settled, Debtor believes that it may be able to establish a sustainable business over time, subject to obtaining a new major tenant for the Center, such as a minor league hockey team.

22. The bankruptcy filing and the need for reorganization were precipitated by the Chapter 7 bankruptcy case of Global, which had acted as the Debtor's managing member and as the manager of the Center. Since the acquisition of Global's rights and interests in January 2015, the current management of PVEC has determined that PVEC

---

[1] All such payments are required to be deposited in an account at Wells Fargo Bank, which account is in the name of PVEC. However, pursuant to a Deposit Only Account Agreement among the Town, PVEC, and Wells Fargo Bank, Wells Fargo Bank has sole dominion and control over the funds in that account.

cannot continue to operate the Center without obtaining relief under Chapter 11 of the Bankruptcy Code.

23. In addition to the above, the obligations under the Bonds are and have been in default. The Debtor believes that the Bondholders and/or the Trustee under the Indenture may initiate collection remedies, thus depriving the Debtor of its ability to maintain its going concern value for the benefit of all creditors (including the Bondholders) and the bankruptcy estate.

24. When Flats I assumed management of the Center and of PVEC in late January 2015, it immediately focused on increasing operational efficiency and obtaining new event contracts in order to increase revenues. However, it was recognized that the Center's and PVEC's deficits could not be rectified immediately and without reorganization and restructuring. Ultimately, the Debtor concluded that the respite provided by a Chapter 11 proceeding would give it the ability to address operational issues and restructure its overwhelming debt in order to preserve the Center as a going concern for the benefit of creditors and the community. Consequently, the Debtor filed this case on August 14, 2015.

**Specific Motions**

**Bank Accounts**

25. The Debtor maintains three bank accounts at Country Bank in Prescott Valley: (a) an account for general operations, including payments for contract labor; (b) an event account in which all sales proceeds are deposited until event expenses are paid and then transferred to the general account; and (c) a credit card account used for credit card charges related to an event and then transferred to the general account after deduction of related fees.

26. The Debtor has filed a motion to maintain its current bank accounts and cash management systems. The Debtor's accounts are designed to segregate monies for each

event and avoid co-mingling of funds until an event is completed and expenses paid. I believe that closing the accounts and altering the cash management system would cause confusion and disrupt the Debtor's operations

**Utilities**

27. The Debtor currently receives utility services from Arizona Public Service (electricity), Cable One (telephone and internet), Town of Prescott Valley (water and sewer), Unisource (gas), Ring Central (telephone and computer) and Verizon Wireless (cellular phone) (collectively "**Utility Companies**").

28. The Debtor is current with its payments to the Utility Companies.

29. The Debtor has filed a motion proposing a procedure for providing adequate assurances of future payment to all Utility Companies. This proposed procedure entails an agreement by the Debtor to either make use of any existing deposits held by the Utility Companies, or provide a deposit up to the equivalent of the value on one month average utility billing over the past 12 months of service, or provide such other form of adequate assurance as the parties may agree upon. The Debtor also proposes a mechanism for Utility Companies to request additional or other assurances of future payment.

30. The Debtor fully intends to pay all post-petition obligations owed to Utility Companies.

31. I believe these procedures provide the fairest way of proving Utility Companies with sufficient assurance that they will continue to be paid in the ordinary course during the pendency of this Chapter 11 case.

**Debtor-in-Possession Loan**

32. Since January 2015 and prior to the bankruptcy filing, Fain Signature Group, LLC ("**FSG**") has advanced funds to the Debtor on an unsecured basis to pay for various operational needs. To date, FSG has loaned and advanced more than $500,000 to PVEC. The Debtor is still in need of such funds and advances. To that end, FSG has agreed to

provide a loan of up to $300,000 secured solely by the receipt of an administrative priority claim in the bankruptcy case (the "**Loan**"). The terms of the Loan call for 8% per annum interest and a maturity date of the lesser of one year, the effective date of a plan of reorganization, or the conversion of the case to Chapter 7.

33. The Debtor needs the Loan to cover any shortfalls in cash flow as it focuses on obtaining new contracts to generate increased income.

34. The Debtor has considered other possible financing options; however, obtaining the Loan from FSG provides the most expedient manner by which to obtain the needed funds. FSG is familiar with the risks of the business and already has served as a source of funding. The Debtor believes any other lender would require security which the Debtor is not prepared to offer.

35. The estate and its creditors will benefit from the Loan in that operations will be preserved. This is critical as the Debtor formulates its plan. Creditors will not be harmed by the financing proposal.

36. I believe that over the next few months, the Debtor will experience cash-flow shortages of at least $55,000 per month. To protect against that possibility, the Debtor seeks debtor-in-possession financing and approval of the Loan. The Loan will allow the Debtor to preserve its relationships with its vendors, who supply goods and services that are vital to the Debtor's operations. Without the funds, the Debtor may lose the ability to maintain such ongoing business relationships, and therefore, the value of the Debtor's estate may be compromised.

36. The Debtor has not secured sufficient post-petition financing from any alternative prospective lender on more favorable terms and conditions than those set forth herein. Additionally, time is of the essence because the Debtor requires the funds to maintain its business operations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED on this 14th day of August, 2015.

/s/ Sean B. Fain

**FOREGOING** electronically filed with the Clerk of the U.S. Bankruptcy Court for the District of Arizona this 14th day of August, 2015, with a COPY served this same date via e-mail on the following party:

Edward Bernatavicius
U.S. TRUSTEE'S OFFICE
230 N. First Avenue, Suite 204
Phoenix, AZ 85003
edward.k.bernatavicius@usdoj.gov
*Attorneys for the United States Trustee*

Michael P. Cillo
Scott W. Wilkinson
DAVIS & CERIANI PC
1350 17th Street, Sutire 400
Denver, CO 80202
mcillo@davisandceriani.com
swilkinson@davisandceriani.com
*Attorneys for Allstate Life Insurance Company*

Michael J. Lavelle
Matthew K. Lavelle
LAVELLE & LAVELLE, PLC
Camelback Esplande II Center, Suite 888
2525 East Camelback Road
Phoenix, AZ 85016
mjl@lavelle-lavelle.com
matt@lavelle-lavelle.com
*Attorneys for Allstate Life Insurance Company*

| | |
|---|---|
| 1 | |
| 2 | Alain M. Baudry<br>ROSS & ORENSTEIN, LLC |
| 3 | 222 South Ninth Street, Suite 470<br>Minneapolis, MN 55402-3389 |
| 4 | abaudry@rossbizlaw.com |
| 5 | *Attorneys for Wells Fargo Bank, N.A.* |
| 6 | Jared G. Parker<br>PARKER SCHWARTZ, PLLC |
| 7 | 7310 N 16th Street, Suite 330 |
| 8 | Phoenix, AZ 85020<br>jparker@psazlaw.com |
| 9 | *Attorneys for Town of Prescott* |
| 10 | 20 Largest Unsecured Creditors |
| 11 | of Debtor. |
| 12 | /s/ Lauri Andrisani<br><sub>PHOENIX 54097-2 236715v2</sub> |
| 13 | |
| ... | |
| 28 | |